FILED
2013 Mar-21  PM 01:51
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| JOE L. HUFFMAN, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 6:11-CV-03673-LSC |
| | ] | |
| CAROLYN COLVIN, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.      Introduction.

The plaintiff, Joe L. Huffman, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB").  Mr. Huffman timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Huffman was thirty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a ninth grade education that included special education courses.  (Tr. at 19, 30, 117, 159.)  His past work experiences include

employment as a tile-setter.  (*Id.* at 36-37, 155-56, 163-70.)  Mr. Huffman originally claimed that he became disabled on January 1, 2003, due to "legs and back problems, left ear," but at his administrative hearing he amended his alleged onset date to February 12, 2009.  (*Id.* at 29, 108, 155, 172.)  Mr. Huffman also states that he suffers from depression and bad headaches and that he has difficulty sleeping, walking, and standing for prolonged periods of time.  (*Id.* at 33-34, 172-77.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id.*  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id.*  The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether

the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ first found that Mr. Huffman's insured status for DIB expired on December 31, 2007.  (Tr. at 26, 145.) Therefore, because Plaintiff now alleges that he became disabled after his insured status expired, the ALJ dismissed Plaintiff's request for an administrative hearing

about his eligibility for DIB, leaving only his claim for SSI. (*Id*. at 26, 29.) The ALJ further determined that Mr. Huffman has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id*. at 11.) According to the ALJ, Plaintiff's osteoarthritis of the right ankle, status-post avulsion fracture of the distal right fibula, hearing loss, dysthymic disorder, and borderline intellectual functioning are considered "severe" based on the requirements set forth in the regulations. (*Id*.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id*. at 13.)

The ALJ did not find Mr. Huffman's allegations to be totally credible, and he determined that the plaintiff has the following residual functional capacity: sedentary work for at least six hours in an eight-hour work day with normal breaks, the ability to stand or walk for at least two hours in an eight-hour work day with normal breaks, the ability to lift, carry, push, and pull ten pounds occasionally, the ability to understand, remember, and carry out simple, but not complex or detailed, instructions, the ability to relate to supervisors and coworkers, the ability to deal with routine changes in the workplace, as well as the ability to tolerate casual contact with the general public. (*Id*. at 15.) The ALJ also found that he can "otherwise perform sedentary work . . . that would not be precluded by an inability to work at unprotected heights or operate

automotive equipment and poor hearing in the left ear but adequate hearing in the right ear to avoid dangerous workplace situations." (*Id.*)

According to the ALJ, Mr. Huffman is unable to perform any of his past relevant work, he is a "younger individual," is able to communicate in English, and has a "limited education," as those terms are defined by the regulations. (*Id.* at 17.) He determined that Plaintiff's lack of transferable skills from any past relevant work was not an issue in this case because, using the Medical-Vocational Rules as a framework, Plaintiff is "not disabled." (*Id.*) The ALJ found that Mr. Huffman has the residual functional capacity to perform less than the full range of sedentary work. (*Id.*) Even though Plaintiff cannot perform the full range of sedentary work, the ALJ used Medical-Vocational Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, such as toy stuffer, eyeglass polisher, and waxer. (*Id.* at 18.) The ALJ concluded his findings by stating that Plaintiff has not been under a disability, as defined by the Social Security Act, since February 12, 2009, the date when his application was filed. (*Id.*)

## II.    Standard of Review.

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to

apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Mr. Huffman alleges that the ALJ's decision should be reversed and remanded for two reasons.  First, he believes that the ALJ failed to properly develop the record with regard to Plaintiff's alleged hearing loss.  (Doc. 12 at 12-13.) Second, Plaintiff contends that the ALJ did not follow the proper legal standards and requirements during the administrative hearing in regards to the testimony of the Vocational Expert ("VE").  (*Id*. at 10, 12-13.)

A.   Failure to Properly Develop Record.

Plaintiff contends that the ALJ failed to properly develop the record with respect to Mr. Huffman's hearing loss, and that the ALJ's decision should thus be remanded for further development of the record.  (Doc. 12 at 12-13.)  Specifically, Plaintiff argues that the ALJ's finding of adequate hearing in Plaintiff's right ear was speculative, that the ALJ didn't provide a proper discussion of the evidence of hearing loss in Plaintiff's right ear, and that the ALJ failed to properly interpret the report of Dr. Gilliland, an otolaryngologist.  (*Id*.)  Due to these legal errors, Plaintiff contends, the ALJ based his decision on a less than complete record which he had an obligation to develop but did not.  (*Id*. at 12.)

The ALJ has a "basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). The ALJ also has a duty to probe conscientiously for all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). However, social security regulations provide that "when the evidence [on record] . . . is *inadequate* for us to determine whether you are disabled, [the ALJ] will need additional information to reach a determination." 20 C.F.R. §§ 404.1512(e), 416.912(e) (emphasis added). Thus, where the ALJ's findings are supported by sufficient evidence, there is no further obligation to continue developing the record or to seek additional medical testimony. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). In all social security disability cases, the burden of proving Plaintiff's disability and providing evidence to show particular impairments rests solely on Plaintiff. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 42 U.S.C. § 423(d)(5). Not only is the ultimate evidentiary burden placed on Plaintiff, but Plaintiff must also make a "clear showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded . . . for further development of the record." *Graham v. Apfel*, 129 F.2d 1420, 1422 (11th Cir. 1997). Therefore it is up to Plaintiff to show that there was an evidentiary gap which resulted in prejudice. *See Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991).

Here, the record contained sufficient evidence for the ALJ to make an informed decision concerning Mr. Huffman's alleged hearing loss. Although Plaintiff argues that the ALJ's finding of adequate hearing in his right ear is speculative and that proper discussion and interpretation of Dr. Gilliland's report on Plaintiff's hearing loss was lacking, the record is replete with medical testimony and consultations concerning Plaintiff's hearing loss. As an initial matter, in order to develop the record on Plaintiff's alleged hearing loss the ALJ referred Plaintiff to Dr. Gilliland after his administrative hearing. (Tr. at 36, 319.) *See* 20 C.F.R. § 416.919a(b) (stating that an ALJ may develop a claimant's medical history for the 12 month period before the claimant applied for SSI including arranging for a consultative examination when the evidence is insufficient to support a decision on the claimant's claim). Dr. Gilliland, an otolaryngologist, performed a one-time audiology examination of Plaintiff on December 15th, 2010. (*Id.* at 319.) Dr. Gilliland's impression was that Plaintiff has chronic middle ear problems, including otitis media, and also some baseline sensorineural hearing loss, but that the otitis media could be treated. (*Id.*)

While Dr. Gilliland's audiogram results show that Mr. Huffman has significant hearing loss, the ALJ properly noted that the impairment did not meet a listed impairment. (*Id.* at 13.) An impairment only meets a listed impairment if it satisfies all of the criteria of the listing. 20 C.F.R. § 416.925(c)(3). An impairment that only

meets some of those criteria, no matter how severely, does not qualify. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  In order for Mr. Huffman to meet the listed impairment for hearing loss, his impairment must not be restorable by hearing aid and must cause "average hearing threshold sensitivity for air conduction of 90 decibels or greater and for bone conduction to corresponding maximal levels, in the better ear, determined by the simple average of hearing thresholds at 500, 1000, and 2000 hz." 20 C.F.R. pt. 404, subpt P., app. 1 § 20.08(A).  Mr. Huffman's hearing impairment does not meet these levels of sensitivity.  (Tr. at 320.)  Audiogram results from Dr. Gilliland showed that Plaintiff's hearing thresholds in his better ear at the relevant frequencies ranged from about 55 to 85 decibels for air conduction and from about 35 to 50 decibels for bone conduction.  (*Id.*)  Therefore, Plaintiff's average hearing threshold sensitivity did not equal or exceed 90 decibels for either air or bone conduction.  (*Id.*)  *See Sullivan,* 493 U.S. at 530 (the impairment must meet all of the specified medical criteria in order to meet a listed impairment).

Further, Plaintiff's own statements indicate that only the hearing loss in his left ear was significant.  When asked to list impairments that limited his ability to work in his disability report in February 2009, Mr. Huffman did not mention hearing loss in his right ear, but only discussed his left ear. (Tr. at 155.)  He also failed to mention any hearing loss in his right ear to Whatley Health Services during an examination in

October 2010. (Tr. at 314.) Additionally, the reports by two other examining physicians concluded that the hearing in Plaintiff's right ear was adequate. First, Dr. Samia S. Moizuddin's examination in June 2009 identified decreased hearing only in Plaintiff's left ear. (Tr. at 241.) Then, in December 2010, Dr. Bruce Pava examined Plaintiff at the request of the ALJ and, despite diagnosing him with "[p]artial deafness," he indicated that Plaintiff could hear and understand simple oral instructions and use a telephone to communicate. (Tr. at 327.) Given this evidence, Plaintiff's assertion that the ALJ "speculat[ed]" in determining that Plaintiff's hearing in his right ear was adequate is without merit. As such, the evidence supports the ALJ's determination that Plaintiff's left ear hearing was poor and right ear hearing was "adequate . . . to avoid dangerous workplace situations." (Tr. at 15.)

Finally, Plaintiff makes no "clear showing of prejudice" as is required when arguing that the record was inadequately developed. *Graham*, 129 F.2d at 1422. Without evidence that the ALJ's decision would have been different in the light of new information, the ALJ is not required to perform any further fact-finding. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). In this case, Plaintiff offers no new information and makes no showing of prejudice warranting remand for further develop of the record.

Plaintiff's arguments that the ALJ's finding of adequate hearing was speculative and that the ALJ did not provide proper discussion or interpretation of the evidence from Dr. Gilliland's report regarding Plaintiff's hearing loss in his right ear are not supported by the record.  The record contains enough evidence for the ALJ to make an informed decision in regards to Mr. Huffman's hearing loss.  Thus, the record was sufficiently developed in this case.

B.     Failure to Follow Proper Legal Standards.

Plaintiff also asserts that the ALJ failed to follow the proper legal standards regarding the VE's testimony in two ways.  First, Plaintiff claims that the ALJ did not afford his attorney the opportunity to question the VE about Plaintiff's alleged hearing loss during the administrative hearing.  (Doc. 12 at 10.)  Second, Plaintiff argues that the ALJ erred by not including Dr. Gilliland's findings regarding Plaintiff's "chronic middle ear problems including otitis media" and "baseline sensorineural hearing loss" in the hypothetical he posed to the VE.  (Doc. 12 at 12-13.)  On review, this court must determine whether the proper legal standards and requirements were met.  *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

When the ALJ concluded the administrative hearing on November 2, 2010, he stated that he would send Mr. Huffman to have his hearing tested and find out what the problem was.  (Tr. at 36.)  The ALJ then asked Plaintiff's attorney if he had any

questions for the VE, and the attorney stated that he would rather wait to question the VE at a later date, presumably when he would have access to the additional test results. (Tr. at 38-39.) Plaintiff claims that the ALJ should have told his counsel that there would be no further opportunities to question the VE about Plaintiff's impairments. (Doc. 12 at 10.) However, this claim is unsupported by the record.

On December 28, 2010, the ALJ sent a letter to Plaintiff's attorney informing him that the ALJ intended to enter the additional test results from the examinations Dr. Gilliland and Dr. Pava had just performed into the record. (Tr. at 216.) The letter notified Plaintiff's attorney that he may submit written comments concerning the reports, any additional evidence he wanted considered, or written questions for Dr. Gilliland and Dr. Pava. (Tr. at 216.) The ALJ further advised Plaintiff's counsel that he may request a supplemental hearing for an opportunity to appear, testify, produce witnesses, submit written or oral statements concerning the facts and law, and question witnesses regarding the new information. (*Id.*) Plaintiff's attorney received this invitation and expressly declined the opportunity for a supplemental hearing in a letter dated December 30, 2010. (Tr. at 219.) Specifically, Plaintiff's counsel's letter confirmed that the attorney "received and reviewed the consultative examination[s]" and then "request[ed] that the evidence be entered into the record and a decision be made." (Tr. at 219.) Because Plaintiff's attorney requested that the

ALJ issue his decision, he therefore waived the opportunity afforded him to request a supplemental hearing. *See Jones v. Dep't of Health and Human Servs.*, 941 F. 2d 1529, 1534 (11th Cir. 1991) (finding that the plaintiff waived opportunity to cross examine a witness when the plaintiff's attorney submitted comments in response to the post-hearing reports and did not request an opportunity to cross-examine the authors of the reports or object to their use). Based on the aforementioned evidence, Plaintiff's claim that his attorney was not given an opportunity to question a VE regarding possible hearing loss in his right ear lacks merit.

For the same reasons, Plaintiff's argument that the ALJ's hypothetical posed to the VE was incomplete lacks merit. Plaintiff asserts that because the hypothetical did not specifically include Plaintiff's "chronic middle ear problems including otitis media" and "baseline sensorineural hearing loss" as diagnosed by Dr. Gilliland, it was incomplete. (Tr. at 319.) The ALJ did not have Dr. Gilliland's report before him during Plaintiff's hearing, because Dr. Gilliland had not yet conducted his examination of Plaintiff. He was asked to do so by the ALJ after the hearing. (Tr. at 38-39.) And, as stated previously, Plaintiff's counsel declined the ALJ's offer to conduct a supplemental hearing where, presumably, Plaintiff's counsel could have questioned Dr. Gilliland or a VE in detail about Dr. Gilliland's findings.

In any event, the record reveals that the ALJ's hypothetical question to the VE was complete. The ALJ must pose a hypothetical question to the VE which comprises all of the claimant's impairments. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). With regard to Plaintiff's alleged hearing loss, the ALJ asked the VE to consider a hypothetical person that, among other thing, "can not hear well in the left ear, but had adequate hearing in the right ear to avoid dangerous situations in a work place, or to warn other people of danger in the workplace." (Tr. at 38.) As previously noted, substantial evidence supports this part of the ALJ's RFC finding, and the ALJ correctly found that Plaintiff's "chronic middle ear problems including otitis media" and "baseline sensorineural hearing loss" as diagnosed by Dr. Gilliland were impairments that did not meeting a listing. Given this, Plaintiff has not demonstrated that excluding Dr. Gilliland's findings resulted in prejudice. *See Graham* 129 F.2d at 1422 (in order for there to be a violation of Plaintiff's rights in this context, Plaintiff must make a clear showing of prejudice). Therefore, Plaintiff's argument that the proper legal standards and requirements regarding the hypothetical posed to the VE were not followed and require reversal must be rejected.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Mr. Huffman's arguments, the Court finds the Commissioner's decision is supported by substantial

evidence and in accord with the applicable legal standards and requirements. A separate order will be entered.

Done this 21st day of March 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[160704]